1
2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3
4
5
6
7
8

| | |
|---|---|
| AZIZA KINNEY, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:20-cv-02167-GMN-DJA |
| vs. ) | |
| ) | **ORDER** |
| GEICO CASUALTY COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

9
10
11

     Pending before the Court is Defendant GEICO Casualty Company's ("Defendant's") Motion for Summary Judgment, (ECF No. 30).  Plaintiff Aziza Kinney ("Plaintiff") filed a Response, (ECF No. 33), and Defendant filed a Reply, (ECF No. 35).

12
13
14

     Also pending before the Court is Plaintiff's Motion for Partial Summary Judgment, (ECF No. 31).  Defendant filed a Response, (ECF No. 32), and Plaintiff filed a Reply, (ECF No. 36).

15
16
17

     For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

18

**I.**    **BACKGROUND**

19
20
21
22
23
24
25

     This case arises from an insurance coverage dispute.  The parties do not dispute the existence, validity, and terms of the automobile insurance policy issued by Defendant, which included coverage for a 2016 Nissan Versa vehicle. (*See* Def.'s MSJ 2:22–26); (Pl.'s MPSJ 3:19–4:3).  The parties also do not dispute facts relating to the underlying accident: On June 22, 2019, Plaintiff was rear-ended by non-party driver Arthur Drain (the "tortfeasor") while she was driving the insured vehicle, resulting in serious injuries to Plaintiff. (Pl.'s MPSJ 4:22–5:8);
*///*

(Resp. Pl.'s MPSJ 2:15–18).[1]   The tortfeasor was 100% at fault for the accident. (Excerpts GEICO's Claim IQ System at 1, Ex. 10 to Pl.'s MPSJ, ECF No. 31-10).  The tortfeasor's insurance carrier accepted full responsibility for the accident and tendered its full $25,000.00 policy limits to Plaintiff. (02/04/20 UIM Demand Letter, Ex. 2 to Pl.'s MPSJ, ECF No. 31-2).

Because Plaintiff's damages allegedly exceeded $25,000.00, Plaintiff submitted a demand letter to Defendant for underinsured motorist (UIM) coverage for the policy limit of $25,000.00. (*Id.* at 2).  At the time, Plaintiff believed her UIM benefits to be at least, or greater than, $65,000.00 based on the details of the accident and the nature and extent of Plaintiff's injuries. (*Id.*).  Plaintiff alleges that she suffered serious and permanently disabling physical and psychological injuries, including, but not limited to, cervical sprain/strain, thoracic sprain/strain, cervical posterior facet syndrome, thoracic posterior facet syndrome, and post traumatic headaches. (Second Am. Compl. ("SAC") ¶ 10, ECF No. 19).  She has incurred medical expenses in excess of $21,000.00 and her anticipated future medical expenses include the costs of psychological treatment, cognitive behavioral therapy, and biofeedback therapy. (*Id.*).

Defendant assigned the claim to its Senior Claims Examiner Leigh Aubuchon. (Dep. Tr. Aubuchon 9:23, 28:12–21, Ex. 17 to Pl.'s MPSJ, ECF No. 31-17).  Aubuchon responded to Plaintiff's demand letter and requested a recorded statement and an additional seven days to complete the evaluation of Plaintiff's claim. (Decl. Christopher Teves ¶ 8, Ex. B to Def.'s MSJ, ECF No. 30-2).  Defendant used its Claim IQ program to assess Plaintiff's claim. (Dep. Tr. Aubuchon 26:1–27:5, Ex. 17 to Pl.'s MPSJ).  During its investigation, Defendant did not conduct an independent medical exam of Plaintiff's injuries. (Dep. Tr. McGinnis 62:21–63:21, Ex. 16 to Pl.'s MPSJ, ECF No. 31-16).

---

[1] Although Defendant qualifies its statement of facts by noting that Plaintiff "alleges" she was injured due to the actions of an underinsured driver on June 22, 2019, Defendant does not dispute any facts relating to the accident. (*See generally* Resp. Pl.'s MPSJ).

1    Defendant initially evaluated Plaintiff's claim at $25,359.01 and offered $359.01 in

2    settlement after applying the offset of tortfeasor's insurance policy. (Decl. Christopher Teves

3    ¶ 9, Ex. B to Def.'s MSJ).  After Plaintiff's counsel rejected this offer, Defendant increased its

4    settlement offer to $1,300. (*Id.* ¶ 13).  Plaintiff rejected this offer but requested tender of the

5    $1,300 offer pursuant to NAC 686A.675(7) pending final resolution of her claim. (April 15,

6    2020 Letter, Ex. 7 to Pl.'s MPSJ, ECF No. 31-7).  Defendant has not yet paid any amount

7    pending resolution of Plaintiff's claims. (Dep. GEICO 88:3–9, Ex. 18 to Pl.'s MPSJ, ECF No.

8    31-18).

9    On October 7, 2020, Plaintiff filed the instant action in Nevada state court for three

10   causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and

11   fair dealing; and (3) breach of the Nevada Unfair Claims Practices Act, NRS 686.310. (*See*

12   Compl., Ex. A to Pet. Removal, ECF No.1-1).  Plaintiff later amended her Complaint on

13   October 12, 2020. (*See* FAC, ECF No. 1-1).  On November 25, 2020, Defendant removed the

14   action to federal court on the basis of diversity jurisdiction. (Pet. Removal, ECF No. 1).

15   On July 30, 2021, the Court granted in part and denied in part Defendant's Motion to

16   Dismiss Plaintiff's second and third claims. (Order, ECF No. 18).  The Court denied

17   Defendant's Motion to Dismiss as to Plaintiff's second claim and found that ruling on this

18   claim under the genuine dispute doctrine was premature at the motion to dismiss stage. (*Id.*

19   5:6–6:16).  The Court granted Defendant's Motion to Dismiss as to Plaintiff's third claim

20   because Plaintiff's Complaint included "nothing more than a verbatim recitation of the

21   language from NRS § 686A.310(1)." (*Id.* 7:7–10).  Plaintiff then amended her Complaint to re-

22   allege her third claim for Breach of Statutory Duties. (*See* SAC, ECF No. 19).  Defendant now

23   moves for summary judgment on Plaintiff's second and third claims, and Plaintiff moves for

24   partial summary judgment on the issue of liability in her first and third claims.

25   ///

1    II.    **LEGAL STANDARD**

2           The Federal Rules of Civil Procedure provide for summary adjudication when the

3    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4    affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant

5    is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that

6    may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

7    A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to

8    return a verdict for the nonmoving party. *Id.*  "The amount of evidence necessary to raise a

9    genuine issue of material fact is enough 'to require a jury or judge to resolve the parties'

10   differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir.

11   1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary

12   judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving

13   party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd.*

14   *P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to

15   isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477

16   U.S. 317, 323–24 (1986).

17          In determining summary judgment, a court applies a burden-shifting analysis.  "When

18   the party moving for summary judgment would bear the burden of proof at trial, it must come

19   forward with evidence which would entitle it to a directed verdict if the evidence went

20   uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing

21   the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

22   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citation and

23   quotation marks omitted).  In contrast, when the nonmoving party bears the burden of proving

24   the claim or defense, the moving party can meet its burden in two ways: (1) by presenting

25   evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating

that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

1  in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

2  not significantly probative, summary judgment may be granted. *See id.* at 249–50.

3  **III.    DISCUSSION**

4        Three causes of action remain in this case: (1) Breach of Contract; (2) Breach of the

5  Implied Covenant of Good Faith and Fair Dealing (Bad Faith); and (3) Breach of Statutory

6  Duties (Unfair Claims Practices Act). (*See generally* SAC).  Defendant moves for summary

7  judgment on Plaintiff's second and third causes of action. (Def.'s Mot. Summ. J. ("Def.'s

8  MSJ") 1:18–20).  Plaintiff moves for partial summary judgment on the issues of liability on her

9  first and third causes of action. (Pl.'s Mot. Partial Summ. J. ("Pl.'s MPSJ") 1:18–21; 14:25–26;

10  16:4–6).  The Court addresses each cause of action in turn.

11        **A.  Breach of Contract[2]**

12        Defendant does not move for summary judgment on Plaintiff's Breach of Contract

13  claim.  Plaintiff moves for partial summary judgment on the issue of liability. (Pl.'s MPSJ

14  14:25–26).  Plaintiff argues that "[o]nly the dollar value of [Plaintiff's] damages caused by the

15  underinsured motorist in excess of the coverage of the underinsured motorist's policy limits,

16  *not liability*, remain in issue." (*Id.* 15:20–23).  But the issue of liability is directly related to the

17  issue of damages; as Defendant notes, if Plaintiff's "damages do not exceed the tortfeasor's

18  policy . . . then [Defendant] has not breached the contract by offering less than is ultimately

19  owed." (Resp. Pl.'s MPSJ 4:10–12).

20        Plaintiff states, "It is undisputed that [Plaintiff] received a settlement for the $25,000

21  policy limits of the underinsured motorist and that Plaintiff's damages exceeded $25,000."

22  (Pl.'s MSJ 15:10–12).  However, Plaintiff does not offer any evidence to establish the absence

23

24  _____

25  [2] A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the
defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*,
818 F.Supp.2d 1271, 1274 (D. Nev. 2011) (citation omitted).  The parties do not dispute the existence of a valid
contract, and the parties agree that the issue of damages is not ripe for summary adjudication.

of a genuine issue of fact on the matter of damages, including whether Plaintiff's damages exceeded $25,000 plus the amount Defendant offered to settle her insurance claim. Therefore, Plaintiff fails to meet her burden on her Motion. Accordingly, the Court DENIES Plaintiff's Partial Motion for Summary Judgment on the issue of liability on her breach of contract claim.

### B. Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant moves for summary judgment on Plaintiff's claim for Breach of the Implied Covenant of Good Faith and Fair Dealing. A claim of breach of the covenant of good faith and fair dealing is "a tort action often referred to as 'bad faith.'" *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F. Supp. 1237, 1239 (D. Nev. 1994). Such a claim "arises only 'in rare and exceptional cases' when there is a special relationship between the victim and tortfeasor," such as the relationship between insurers and insureds. *Ins. Co. of the W. v. Gibson Tile Co.*, 461, 134 P.3d 698, 702 (Nev. 2006).

Bad faith is "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (quoting *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352 (Nev. 1986)). In order to establish a claim for bad faith, a plaintiff must establish three elements: (1) there was a denial of their claim, (2) the denial was unreasonable, and (3) the insurer knew it lacked reasonable basis to deny the claim or acted with reckless disregard as to the unreasonableness of the denial. *Schumacher v. State Farm Fire & Cas. Co.*, 467 F.Supp.2d 1090, 1096 (D. Nev. 2006). "Thus, the insurer is not liable for bad faith for being incorrect about policy coverage as long as the insurer had a reasonable basis to take the position that it did." *Pioneer*, 863 F. Supp. at 1242.

"Because the key to a bad faith claim is whether denial of a claim was reasonable, a bad faith claim should be dismissed on summary judgment if the defendant demonstrates that there was 'a genuine dispute as to coverage.'" *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003). This is known as the "general dispute doctrine." *Id.* Although the genuine dispute

doctrine permits summary adjudication when coverage is disputed, this doctrine "does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim." *Wilson v. 21st Century Ins. Co.*, 171 P.3d 1082, 1089 (Cal. 2007).

Here, Defendant argues that summary judgment is warranted because there is a genuine dispute as to Plaintiff's injuries; if a genuine dispute exists, Defendant's refusal to pay the amount Plaintiff requested is not unreasonable. (Def.'s MSJ 11:3–18). But even when there is a genuine dispute over an insured's damages, an insurer may act in bad faith if the insurer fails to thoroughly and fairly investigate, process, and evaluate the insured's claim. *Wilson*, 171 P.3d at 1082. Plaintiff raises a genuine dispute of material fact on this issue. Specifically, Plaintiff notes that Defendant did not seek review of Plaintiff's medical and psychological records by a doctor until after litigation commenced. (Resp. Def.'s MSJ 19:20–26). "[T]he fact that the Defendant sought an expert opinion after litigation arose may convince a jury to determine that Defendant was indeed unreasonable in its initial investigation of Plaintiff's claim." *Tracey v. Am. Fam. Mut. Ins. Co.*, No. 2:09-cv-01257-GMN, 2010 WL 3613875, at *3 (D. Nev. Sept. 8, 2010). The Court therefore DENIES Defendant's Motion for Summary Judgment on Plaintiff's bad faith claim.

### C.  Unfair Claims Practices Act

Defendant moves for summary judgment on Plaintiff's statutory claim. (Def.'s MSJ 14:1–16:18). Plaintiff moves for partial summary judgment on the issue of liability for this claim. (Pl.'s MPSJ 16:5–22:8). Unlike claims for bad faith, the Nevada Unfair Claims Practices Act ("UCPA") addresses the manner in which an insurer handles an insured's claim. *See Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F.Supp.2d 1223, 1236 (D. Nev. 2010). Under the UCPA, an insured can recover for any damages sustained as a result of the commission by Defendant of any act defined by the UCPA to be an "unfair trade practice." NRS § 686A.310(2). Plaintiff bases her UCPA claim on the following unfair trade practices:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

(c) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

(d) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

(e) Failing to effectuate prompt, fair and equitable settlements of claims in which liability of the insurer has become reasonably clear.

(f) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

. . .

(n) Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim.

(SAC ¶ 33); NRS § 686A.310(a).  The Court construes Plaintiff's Second Amended Complaint as alleging distinct UCPA claims under each of these subsections of NRS § 686A.310. *See Angelina Hendrix et al. v. Progressive Direct Ins. Co.*, No. 2:20-cv-01856-RFB-EJY, 2023 WL 2610167, at *5 (D. Nev. Mar. 22, 2023).

### 1. Defendant's Motion

Defendant met its burden of establishing that Plaintiff has not presented evidence supporting her claims.  Specifically, Defendant notes that it promptly responded to Plaintiff's requests and explained that it valued Plaintiff's damages at an amount differing from the amount requested in Plaintiff's demands. (Def.'s MSJ 16:4–14).  Plaintiff helpfully included a timeline in her Response, but her timeline demonstrates that Defendant promptly responded to Plaintiff and stayed in constant communication with her regarding her claim. (Resp. Def.'s MSJ at 14–15).  Thus, Plaintiff fails to establish a genuine dispute of material fact regarding whether Defendant's conduct was untimely for

her claims arising under subsections (b), (d), and (n).  *See, e.g.*, *Gutting v. Am. Fam. Fin. Servs., Inc.*, No. 2:15-cv-02216-GMN-CWH, 2017 WL 1159722, at *5 (D. Nev. Mar. 28, 2017) (finding defendant's offer to settle reasonably timely).

Additionally, Plaintiff offers no support for her contention that Defendant's failure to tender its settlement offer violates this provision, which appears to be Plaintiff's sole basis for her claim under subsection (e).  Furthermore, Defendant met its burden of establishing that Plaintiff has not produced evidence that Defendant's settlement offer was unreasonable or that Defendant failed to adopt and implement reasonable standards for the prompt investigation and processing of claims.  Plaintiff, however, failed to rebut Defendant's argument.  Indeed, Plaintiff failed to address subsections (c) and (f) at all in her Response. (Resp. Def.'s MSJ 25:22–29:13).  Although a dispute remains regarding whether Defendant's investigation amounts to bad faith, Plaintiff has not presented an argument establishing that this dispute is relevant to her UCPA claims.  Accordingly, the Court GRANTS summary judgment for Defendant on Plaintiff's UCPA claims.

### 2.  Plaintiff's Motion

Because the Court GRANTS summary judgment for Defendant on Plaintiff's UCPA claims, the Court DENIES Plaintiff's Motion for Partial Summary Judgment on these claims as moot.

## IV.  <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 30), is **GRANTED in part and DENIED in part**.  The Court **DENIES** summary judgment as to Plaintiff's second cause of action.  The Court **GRANTS** summary judgment for Defendant as to Plaintiff's third cause of action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 31), is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall have thirty days from the date of this Order to file a jointly proposed pretrial order.

**DATED** this __31__ day of March, 2023.

_____
Gloria M. Navarro, District Judge
United States District Court